**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION**

| | | |
|---|---|---|
| DOMINIQUE JENNETTE, as next friend of William Edward Jennette, Jr., deceased, and in her personal capacity, | ) ) ) ) | |
| PLAINTIFF, | ) ) | |
| vs. | ) ) | CASE NUMBER 1:20-cv-00068 |
| CHRISTOPHER STALLINGS, BRANDON MILLER, KENDRA BURTON, SHERRELL SUMMERS, MATTHEW OWENS, LANDON FRAZIER, BRYCE ROBERTS, CITY OF LEWISBURG, TN, and MARSHALL COUNTY, TN, | ) ) ) ) ) ) ) ) ) ) | |
| DEFENDANTS. | ) | |

## AMENDED COMPLAINT

Comes now the Plaintiff Dominique Jennette, next friend of William Edward Jennette, Jr., deceased, by and through her attorneys, and for cause of action against the Defendants respectfully states as follows:

### I. JURISDICTION AND VENUE

1.     This action is brought against the Defendants pursuant to 42 U.S.C. § 1983 for deprivation of civil rights secured by the Fourteenth Amendment to the United States Constitution. It arises out of the savage beating, suffocation, and resultant death of William Edward Jennette, Jr., at the Marshall County Jail. Said death occurred as a result of the actions and inactions of the Defendants, all of whom were acting under color of state law.

2.    Jurisdiction is founded upon 28 U.S.C. § 1331, § 1343(a)(3)(4), and § 1367(a).  This Court has jurisdiction over the Plaintiff's claims of violation of civil rights under 42 U.S.C. § 1983. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 in that the factual acts and omissions which give rise to this cause of action occurred within this district, within one year of the filing of this Amended Complaint and this Court otherwise has jurisdiction.

3.    This action is brought additionally and alternatively pursuant to the Tennessee Governmental Tort Liability Act, Tenn. Code Ann. § 29-20-101 et seq.

## II. PARTIES

4.    The Plaintiff, Dominique Jeanette, is and has been at all times relevant to this matter a resident of Davidson County, Tennessee. She is a natural born adult child of William Edward Jeanette, Jr., deceased, who was not married at the time of his death. She brings this action as next friend for her federal and state cause of action and in her personal capacity for her state cause of action.

5.    Defendant Christopher Stallings was employed by the City of Lewisburg, TN and was at all times material to the allegations in this Amended Complaint acting in his capacity as an officer of the City of Lewisburg Police Department and was acting under color of state law by virtue of his authority as a law enforcement officer. He is sued in his individual capacity.

6.    Defendants Brandon Miller, Kendra Burton, and Sherrell Summers were at all times material to the allegation in this Amended Complaint acting in their capacities as Marshall County deputy sheriffs and were acting under color of state law by virtue of their authority as law enforcement officers and/or jailors. They are each sued in their individual capacities.

7.    Defendant Matthew Owens is employed by Marshall County, TN and was at all times material to the allegation in this Amended Complaint acting in his capacity as a Marshall

County deputy sheriff and was acting under color of state law by virtue of his authority as a law enforcement officer and/or jailor. He is sued in his individual capacity.

8. Defendant Landon Frazier is employed by the City of Lewisburg, TN and was at all times material to the allegations in this Amended Complaint acting in his capacity as an officer of the City of Lewisburg Police Department and was acting under color of state law by virtue of his authority as a law enforcement officer. He is sued in his individual capacity.

9. Defendant Bryce Roberts was employed by the City of Lewisburg, TN and was at all times material to the allegations in this Amended Complaint acting in his capacity as an officer of the City of Lewisburg Police Department and was acting under color of state law by virtue of his authority as a law enforcement officer. He is sued in his individual capacity.

10. Defendants Stallings, Miller, Burton, Summers, Owens, Frazier and Roberts will be collectively referred to hereafter as "Individual Defendants."

11. Defendant City of Lewisburg, TN is a political subdivision of the State of Tennessee. Defendant is and was at all times relevant responsible for the training and supervision of Defendant Christopher Stallings, Landon Frazier, and Bryce Roberts. Defendant City of Lewisburg is and was at all times relevant delegated to Chief David Henley the responsibility to establish and implement policies, practices, procedures, and customs used by Lewisburg Police Officers regarding the use of force against pre-trial detainees. At all times relevant, Defendant City of Lewisburg and its officers were acting under color of state law.

12. Defendant Marshall County, TN is a political subdivision of the State of Tennessee. Defendant is and was at all times relevant responsible for the training and supervision of Defendants Miller, Burton, Summers, and Owens. Defendant Marshall County, TN at all times relevant delegated to Sheriff Billy Lamb the responsibility to establish and implement policies,

practices, procedures, and customs used by Marshall County Sheriff's deputies regarding the use of force against pre-trial detainees. At all times relevant, Defendant Marshall County and its officers were acting under color of state law.

### III.   FACTUAL ALLEGATIONS

13.     On May 4, 2020, William Jennette was arrested for non-violent offenses by members of the Marshall County Sheriff's Office. He remained in the Marshall County Jail as a pre-trial detainee until his untimely death.

14.     On May 6, 2020, in the early morning hours, Mr. Jennette allegedly began to beat against his cell door with his fists. Although he was in a cell by himself, and posed no danger to anyone (except himself perhaps), the decision was made by Marshall County deputies to extract Mr. Jennette from his cell, although to what end remains unclear.

15.     Miller, Burton and Summers opened Mr. Jennette's cell door and he peacefully came out of his cell.  Burton then attempted to grab Mr. Jennette and place him in a restraint chair.

16.     Burton then repeatedly pushed Mr. Jennette approximately 15 feet to the end of a hall in the booking department.

17.     At all times relevant to the allegations of this Amended Complaint, the Marshall County Jail was fully secure and there was no risk of Mr. Jennette escaping the facility.

18.     Miller, Burton and Summers then forced Mr. Jennette up against the wall and physically controlled him.  Despite Mr. Jennette being under control of these Defendants, Miller physically struck Mr. Jennette during this encounter in multiple places on his body.

19.     Mr. Jennette struggled with Miller to attempt to avoid being beaten.

20.     Stallings, a police officer acting as an employee, servant or agent of the Defendant City of Lewisburg, was at the Marshall County Jail at the time of the cell extraction of Mr. Jennette.

21.     After Stallings heard a call for assistance concerning the events occurring with Mr. Jennette, he ran to the area where Mr. Jennette was being beaten.

22.     As Stallings arrived at the scene, Mr. Jennette asked Stallings to "help me they're gonna kill me."

23.     Instead of providing Mr. Jennette any assistance, Stallings immediately grabbed Mr. Jennette and with the assistance of Miller wrestled Mr. Jennette to the ground.

24.     After taking Mr. Jennette to the ground, Stallings and Miller placed Mr. Jennette in a prone position.

25.     Stallings then placed his knee into Mr. Jennette's back and pressed down on him with his weight, pinning Mr. Jennette to the ground.

26.     Stallings then place both hands on Mr. Jennette and pressed down on him with his full weight in further effort to pin Mr. Jennette to the ground.

27.     In placing a substantial amount of weight and force to Mr. Jennette's back, Stallings made it difficult for Mr. Jennette to breathe.

28.     Stallings, Miller and Roberts then grabbed Mr. Jennette's arms in an effort to handcuff his arms behind his back.

29.     Mr. Jennette then cried out [you're] "about to kill me."

30.     Each of the Individual Defendants heard Mr. Jennette say, "about to kill me."

31.     As Roberts placed one of Mr. Jennette's arms in a handcuff, Mr. Jennette pleaded for the Defendants to "please let me up" and "let me up or I'm gonna die."

32.     Stallings then used both hands to press Mr. Jennette's face into the floor of the jail and yelled, "stay down you stupid son of a bitch."

33.     Stallings placed Mr. Jennette's arms behind his back and secured both arms with handcuffs.

34.     Roberts pressed down on Mr. Jennette's arm placing additional pressure against Mr. Jennette's back and making it difficult for him to breathe.

35.     As he was having difficulty breathing, Mr. Jennette then asked Stallings and Roberts to "get off of me" four times.  Mr. Jennette also asked the Individual Defendants to "let me up."

36.     After securing Mr. Jennette in handcuffs, Stallings then directed Summers to "go get leg restraints, before you do anything else go get leg restraints."

37.     While Summers retrieved the leg restraints, Stallings continued to place his weight on Mr. Jennette's back through pressing with both his knee and hands. Stallings' actions of placing his weight into the back of Mr. Jennette made it impossible for him to breathe.

38.     While Summers was retrieving the leg restraints, Burton and Owens held Mr. Jennette's legs to the floor.

39.     Stallings encouraged Burton and Owens to put leg restraints on Mr. Jennette, stating, "get leg restraints he ain't going anywhere."

40.     Owens then placed Mr. Jennette in leg restraints which as Stallings believed prevented Mr. Jennette from moving anywhere.

41.     At the time that the Individual Defendants had him securely handcuffed and placed in leg restraints, Mr. Jennette was adequately controlled and posed no imminent threat to any of the Individual Defendants.

42. At the time that the Individual Defendants had Mr. Jennette securely handcuffed and placed in leg restraints, Mr. Jennette did not pose an immediate threat of serious bodily injury and/or death to any of the Individual Defendants.

43. At the time that the Individual Defendants had Mr. Jennette securely handcuffed and placed in leg restraints, Mr. Jennette was unable to move, roll over, or physically stand up without the assistance of others.

44. Although the Individual Defendants had Mr. Jennette securely handcuffed and placed in leg restraints, none of the Defendants made any effort to assist Mr. Jennette from the prone position into a seated position.

45. Despite the fact that the Individual Defendants had Mr. Jennette securely handcuffed and adequately controlled, they failed to monitor Mr. Jennette's breathing or medical condition throughout their restraint of Mr. Jennette.

46. While Mr. Jennette was being held face down in a prone position on his stomach, Burton and Owens then folded Mr. Jennette's legs up behind his buttocks in a "hogtied" or "hobbled" position, making it impossible for Mr. Jennette to draw a breath.

47. After placing Mr. Jennette in the "hogtied" position, both Owens and Burton pressed Mr. Jennette's legs into his buttocks, further making it impossible for Mr. Jennette to draw a breath.

48. While pressing Mr. Jennette's leg up behind his back, Burton stated, "you little stupid bastard . . . I'm gonna break your mother fucking foot in a minute."

49. As soon as Burton and Owens pressed Mr. Jennette's legs up behind his back, Mr. Jennette stated three times, "I can't breathe."

50. Each of the Individual Defendants heard Mr. Jennette proclaim, "I can't breathe."

51.     In response to Mr. Jennette's claims that he could not breathe, Burton responded, "you shouldn't be able to breathe you little stupid bastard."

52.     Roberts then assisted Owens in holding Mr. Jennette's legs pressed against his buttocks.

53.     The act of "hogtieing" Mr. Jennette was essentially punishment without a legitimate government purpose.

54.     Even though "hogtieing" Mr. Jennette and compromising his ability to breathe, none of the Individual Defendants made any effort to monitor Mr. Jennette's breathing or medical condition throughout the remainder of his restraint.

55.     It is well known throughout the law enforcement and medical communities for decades that placing a subject in a "hogtied" or "hobbled" position negatively affects a person's ability to breathe.

56.     At all times during the restraint of Mr. Jennette, each of the Individual Defendants knew that leaving a person in a prone position in handcuffs and placed in leg restraints posed a risk of positional asphyxiation.

57.     Recognizing that Mr. Jennette was specifically at a risk of death, Stallings then stated, "easy, remember positional asphyxiation guys. That's why I'm not on his lungs, let him breathe."

58.     At the time of Mr. Jennette's death, Stallings was well aware of the risk of death associated with positional asphyxiation from Mr. Jennette being placed in a prone restrained position.

59. Despite knowing the risk of death to Mr. Jennette from positional asphyxiation, Owens and Frazier continued to press Mr. Jennette's legs up against his buttocks and continued to place pressure of their weight down on Mr. Jennette.

60. Despite knowing the risk of death to Mr. Jennette from positional asphyxiation, Stallings and Roberts continued to press down on Mr. Jennette's arms and back and continued to place pressure of their weight down on Mr. Jennette.

61. The continuing pressure placed down onto Mr. Jennette by Owens, Frazier, Stallings and Roberts made it impossible for him to draw a breath.

62. Despite knowing the risk of harm to Mr. Jennette, neither Stallings nor any of the Individual Defendants attempted to be move Mr. Jennette from the prone restrained position to a seated position.

63. Despite knowing the risk of harm to Mr. Jennette, neither Stallings nor any of the Individual Defendants attempted to monitor or assess Mr. Jennette's breathing or assess his medical condition.

64. Despite having Mr. Jennette adequately controlled, Stallings, Roberts, Frazier, and Owens kept Mr. Jennette in a prone restrained position with direct pressure being placed on his back and his body.

65. Mr. Jennette again muttered faintly that he couldn't breathe.

66. Stallings, Roberts, Frazier and Owens continued to keep Mr. Jennette in a prone restrained position with their body weight on top of him for over three minutes.

67. Shortly after being placed in the "hogtied" or "hobbled" position, Mr. Jennette did not resist in any manner.

68. The Individual Defendants knew or should have known from visible and audible indications that Mr. Jennette was no longer able to breathe.

69. As a result of the position Mr. Jennette was forcible held in, he was unable to breathe, something the Individual Defendants knew or should have known from their training on positional asphyxia.

70. In one last plea for help, Mr. Jennette said, "it's all good."

71. Stallings replied to Mr. Jennette that, "no you ain't good you're gonna lay right there for a fucking minute."

72. Instead of checking on the condition of Mr. Jennette to monitor his breathing or assess his medical condition, Stallings then checked on Burton's health and asked, "if you're sure you're good Kendra?"

73. Burton responded, mocking the plight of Mr. Jennette, "I can't breathe."

74. In response to Burton's statement, Stallings laughed.

75. Mr. Jennette moaned and groaned. Still none of the Individual Defendants checked Mr. Jennette's breathing or assess his medical condition.

76. Rather than moving Mr. Jennette from the prone restrained position, monitoring his breathing or assessing his medical condition, Stallings then became concerned about the location of the prongs to his taser.

77. None of the Individual Defendants made any effort to monitor Mr. Jennette's breathing or assess his medical condition while he remained in the prone restrained condition until after Stallings raised a concern that Mr. Jennette was not breathing.

78. None of the Individual Defendants came to Mr. Jennette's aid or assistance at any time while Mr. Jennette was held in the prone restrained position.

79.     Mr. Jennette was ultimately kept in a prone restrained position with the weight of the officers on his back for approximately 4 minutes.

80.     Stallings kept his knee and/or hands with his weight on the back of Mr. Jennette for approximately 4 minutes.

81.     The entire time that Mr. Jennette was kept in the prone restrained position, he remained handcuffed, compliant, restrained and within the physical control of the Individual Defendants.

82.     Despite the obvious need for medical attention, the Individual Defendants delayed in providing medical attention and instead continued to keep Mr. Jennette in a position that rendered him unable to breathe.

83.     As a result of the pressure exerted on Mr. Jennette's back, being in the prone position he was forced into, and having his legs forcibly pressed into his buttocks, Mr. Jennette could not draw air.  Mr. Jennette exhibited audible gasping, labored irregular breathing and began to change colors, which the Individual Defendants observed or should have observed.

84.     Mr. Jennette was unconscious for more than one minute before any of the Individual Defendants raised any concern about his well-being.

85.     Eventually, Stallings rolled Mr. Jennette over and found him to be purple and lifeless.

86.     As it appeared that Mr. Jennette had perished, some of the Individual Defendants then began recovery efforts, including cardiopulmonary resuscitation.

87.     Finally, after an inordinate amount of time, Emergency Medical Services arrived on the scene and began to perform cardiopulmonary resuscitation in an effort to revive Mr.

Jennette. Tragically, it was too late to save Mr. Jennette. Shortly thereafter, he was transferred to the Marshall County Medical Center Emergency Room where he was pronounced dead.

88.    Mr. Jennette perished as a result of asphyxia.

89.    The autopsy performed on Mr. Jennette determined the cause of death to be a homicide.

90.    The Defendants knew or should have known, and it is well known throughout the law enforcement and medical communities, that holding a subject in a prone position of prone restraint for prolonged periods of time can be deadly.

91.    Compressing a person in a prone position with weight on their back and/or abdomen restricts ability to breathe and can result in asphyxiation.

92.    Deaths caused by this form of asphyxiation are often interchangeably referred to as deaths from positional, mechanical, or compression asphyxia, even if technical distinctions exist.

93.    The United States Department of Justice has warned law enforcement for decades about the dangers of prone restraint and as early as 1995: "The risk of positional asphyxia is compounded when an individual with predisposing factors becomes involved in a violent struggle with an officer or officers, particularly when physical restraint includes behind-the-back handcuffing combined with placing the subject in a stomach-down position." National Law Enforcement Technology Center, *Positional Asphyxia-Sudden Death* at *2 (June 1995).

94.    Due to well-known risks associated with prone restraint, it has long been national best practice that once a subject is controlled, it is imperative that they be moved from the prone position, and that their breathing be assessed.

95.     Despite the knowledge of the risks of asphyxia associated with prone restraint, the Individual Defendants employed with Defendants Marshall County, TN and City of Lewisburg were not provided official training on the dangers of positional, mechanical or compression asphyxia associated with prone restraint.

96.     Upon information and belief, Defendants Marshall County, TN and City of Lewisburg routinely trains officers to place handcuffed arrestees or detainees in a prone position without proper training on putting arrestees or detainees in a recovery position and monitoring their breathing and consciousness.

97.     Officers in Marshall County, TN and the City of Lewisburg should know the risks of asphyxiation associated with prone restraint.

98.     At all times relevant to the allegations of this Amended Complaint, Stallings did not have a reasonable fear of imminent bodily harm when he kneeled and pressed on Mr. Jennette's back, nor did Stallings have a reasonable belief that any other person was in danger of imminent bodily danger from Mr. Jennette.

99.     At all times material to the allegations of this Amended Complaint, Burton, Miller, Owens, Frazier, and Roberts did not have a reasonable fear of imminent bodily harm when they pressed on Mr. Jennette's back or pressed his legs into his back, nor did they have a reasonable belief that any other person was in danger of imminent bodily danger from Mr. Jennette.

100.    Every reasonable officer would have known that using force against a compliant, handcuffed, leg shackled individual who was not resisting constitutes excessive force in violation of the Fourteenth Amendment.

101.    Stallings, Burton, Owens, Frazier and Roberts use of deadly force in applying direct pressure on and kneeling on Mr. Jennette who was placed in a prone, restrained position was objectively unreasonable and violated clearly established law.

102.    It was objectively unreasonable for Stallings, Burton, Owens, Frazier, and Roberts to maintain Mr. Jennette in a prone restrained position without properly monitoring his breathing, pulse or otherwise assessing his medical condition.

103.    It was a violation of Mr. Jennette's Fourteenth Amendment rights for Stallings, Burton, Owens, Frazier and Roberts to fail to render medical aid following Mr. Jennette's complaints that he could not breathe and Mr. Jennette's loss of consciousness, each of which demonstrated a serious medical need.

104.    As a result of Stallings, Burton, Owens, Frazier, and Roberts unjustified, excessive, illegal and deadly force, Mr. Jennette experienced conscious pain and suffering.

105.    In addition to the use of unjustified, excessive, illegal, and deadly uses of force, each of the Individual Defendant officers had a duty to intervene on behalf of a citizen whose constitutional rights were being violated in their presence by another officer.

106.    All of the Individual Defendant officers each observed and were in a position to intervene to stop Defendants' Stallings, Burton, Owens, Frazier, and Roberts use of constitutionally unreasonable deadly force against Mr. Jennette.

107.    None of the Individual Defendant officers ever had a reasonable fear of imminent bodily harm, nor did they have a reasonable belief that any other person was in danger of imminent bodily danger from Mr. Jennette after he was handcuffed and placed in leg restraints.

108. The Individual Defendants' actions against Mr. Jennette as described above while Mr. Jennette was restrained were objectively unreasonable, unnecessary, excessive, and without a legitimate law enforcement purpose.

109. While the Individual Defendants engaged in the objectively unreasonable acts described above, each of the Individual Defendants had the opportunity to observe the actions of the other and had the opportunity, duty and ability to prevent this excessive use of force.

110. The Individual Defendants each knew or should have known that the other Defendants were using excessive force in placing Mr. Jennette facedown, placing pressure on his back, and lifting his legs to his buttocks while his hands were handcuffed behind his back, despite the fact that he was restrained and there was no objective reason to continue to put him in this position.

111. By holding down Mr. Jennette as described above, and in failing to provide assistance, the Individual Defendants acted in conspiracy among themselves to inflict excessive force upon Mr. Jennette in a manner that was unnecessary, excessive, and without a legitimate law enforcement purpose.

112. The actions of the Individual Defendants as stated above caused extreme, almost unfathomable, pain and suffering to Mr. Jennette prior to his death.

113. The allegations described herein are not mere conclusory statements but are based upon reports and videos Plaintiff has seen.

114. Each and all of the acts of the Individual Defendants involved in this incident were performed under the color and pretense of the constitutions, statutes, ordinances, regulations, customs and usages of the United States of America and the State of Tennessee, under the color

of law and by virtue of their authority as law enforcement officers and in the course and scope of their employment as law enforcement officers.

## COUNT 1: EXCESSIVE FORCE

115.     Plaintiff re-alleges and incorporates all paragraphs in this Amended Complaint as if expressly stated herein.

116.     The Individual Defendants' acts of placing Mr. Jennette face down while restrained, placing pressure on Mr. Jennette's back, hogtieing him, and failing to relent despite Mr. Jennette's obvious medical distress was an objectively unreasonable, unnecessary, and excessive use of force that constituted punishment and was not rationally related to a legitimate nonpunitive governmental purpose or was excessive in relation to such purpose.

117.     The Individual Defendants' acts of physically striking Mr. Jennette while he was restrained was an objectively unreasonable, unnecessary, and excessive use of force that constituted punishment and was not rationally related to a legitimate nonpunitive governmental purpose or was excessive in relation to such purpose.

118.     The Individual Defendants acted under color of law to deprive Mr. Jennette of his right to be free of excessive force that amounts to punishment pursuant to the Fourteenth Amendment to the Constitution of the United States and by 42 U.S.C. § 1983.

119.     Mr. Jennette's right to be free from excessive force in the manner described in this Amended Complaint was clearly established at the time the force was used.

120.     As a direct and proximate result of the acts of the Individual Defendants described in this Amended Complaint, Mr. Jennette suffered severe mental and physical pain and suffering and injury prior to his death.

121.    The Individual Defendants are jointly and severally liable for the excessive force used on Mr. Jennette because they acted jointly and in conspiracy with one another to affect the harms which constituted excessive force.

122.    The actions and omissions of the Individual Defendants' complained of herein were unlawful, conscious shocking and unconstitutional and performed maliciously, recklessly, fraudulently, sadistically, retaliatory, intentionally, willfully, wantonly and in such a manner as to entitle the Plaintiff to an award of punitive damages.

## COUNT 2: FAILURE TO PROTECT

123.    Plaintiff re-alleges and incorporates all paragraphs in this Amended Complaint as if expressly stated herein.

124.    The Individual Defendants observed or had reason to know that excessive force would be or was being used by other Individual Defendants and had both the opportunity and the means to prevent the harm from occurring and continuing to occur.

125.    There was sufficient time during the restraint for the Individual Defendants separately to stop the other Individual Defendants from the continued use of excessive force yet each failed to take any action to stop the excessive force and actively participated in the excessive force.

126.    The Individual Defendants are liable for failing to protect Mr. Jennette from each other's excessive and unnecessary force because they owed Mr. Jennette a duty of protection against such use of excessive force.

127.    The failure to protect Mr. Jennette from excessive force was a violation of Mr. Jennette's Fourteenth Amendment rights, and was clearly established as such at the time.

128.     As a direct and proximate result of the Individual Defendants' failure to protect Mr. Jennette from excessive force, Mr. Jennette suffered severe harm including pain and suffering and ultimately death.

129.     The actions and omissions of the Individual Defendants complained of herein were unlawful, conscious shocking and unconstitutional and performed maliciously, recklessly, fraudulently, sadistically, retaliatory, intentionally, willfully, wantonly and in such a manner as to entitle the Plaintiff to an award of punitive damages.

## COUNT 3: STATE LAW CLAIM IN THE ALTERNATIVE FOR NEGLIGENCE

130.     Plaintiff re-alleges and incorporates all paragraphs in this Amended Complaint as if expressly stated herein.

131.     In addition and in the alternative to the above federal law claims, Plaintiff asserts claims pursuant to the Tennessee Governmental Tort Liability Act, Tenn. Code Ann. § 29-20-101 et seq.

132.     Defendant City of Lewisburg, TN (through its agents Defendants Stallings, Frazier and Roberts) and Defendant Marshall County, TN (through its agents Defendants Miller, Burton, Summers, and Owens) owed a duty of due care to Mr. Jennette to refrain from handling him in a negligent fashion that could, would and ultimately did cause injury to him.

133.     Defendants City of Lewisburg, TN and Marshall County, TN, through their agents, owed a duty of due care to Mr. Jennette to refrain from handling him in a negligent fashion that could, would and ultimately did cause injury to him.

134.     Defendants City of Lewisburg, TN and Marshall County, TN, through their agents, acted negligently and breached their duty of care in restraining Mr. Jennette which proximately caused his pain and suffering and death.

## PRAYERS FOR RELIEF

1.      That process be issued to the Individual Defendants and that they be required to answer in the time required by law.

2.      That judgment be rendered in favor of the Plaintiff and against the Individual Defendants on all causes of action asserted herein.

3.      That Plaintiff be awarded those damages to which it may appear that she is entitled by proof submitted in this case for the pain and suffering endured by Mr. Jennette prior to his death, funeral expenses incurred, and the pecuniary value of the life of Mr. Jennette as a result of the violation of his rights of Mr. Jennette as guaranteed by the Fourteenth Amendments to the Constitution of the United States.

4.      That punitive damages be assessed against the Individual Defendants.

5.      That the Plaintiff be awarded reasonable expenses including reasonable attorneys' fees and expert fees and discretionary costs pursuant to 42 U.S.C. § 1988 (b) and (c).

6.      That the Plaintiff be awarded all damages allowable for her state cause of action for wrongful death pursuant to Tenn. Code Ann. § 20-5-113 up to the limits provided by Tenn. Code Ann. § 29-20-403.

7.      That Individual Defendants be held jointly and severally liable for all damages.

8.      That the Plaintiff receive any other further and general relief to which it may appear that she is entitled.

9.      That a jury of eight (8) is demanded.

Respectfully Submitted, this 12th day of February, 2021.

/s/ David J. Weissman
David J. Weissman, #25188
Benjamin K. Raybin, #29350
**Raybin & Weissman, P.C.**
424 Church Street, Suite 2120
Nashville, Tennessee 37219
615-256-6666
615-254-4254 (fax)


/s/ Robert P. Gritton
Robert P. Gritton, #018472
**Gritton & Gritton P.L.L.C.**
752 S Church St.
Murfreesboro, TN 37130
615-867-0088
615-867-0089 (fax)
*Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Amended Complaint was served on those individuals listed below by the electronic mail system of the Middle District of Tennessee, United States District Court on this the 12th day of February, 2021:

Robert M. Burns
Howell & Fisher, PLLC
300 James Robertson Parkway
Nashville, TN 37201
615-244-3370
615-244-3518 (fax)
Rburns@howell-fisher.com
*Attorney for City of Lewisburg*


Daniel H. Rader, III
Daniel Hurley Radar, III
Richard Lane Moore
Moore, Rader, Clift & Fitzpatrick, PC
P.O. Box 3347
Cookeville, TN 38502
(931) 526-3311
(931) 526-3092 (fax)
danrader@moorerader.com
danny@moorerader.com
lane@moorerader.com
*Attorney for Christopher Stallings*


D. Andrew Saulters
Michael T. Schmitt
The Ortale Kelley Firm
330 Commerce Street, Suite 110
Nashville, TN 37201
(615) 256-9999
dsaulters@ortalekelley.com
mshcmitt@ortalekelley.com
*Attorneys for Marshall County TN Defendants*


/s Robert P. Gritton
Robert P. Gritton